**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY and GREAT NORTHERN INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 1:20-cv-06797 |
| HEALTHCARE INFORMATION AND MANAGEMENT SYSTEMS SOCIETY, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant Healthcare Information and Management Systems Society, Inc. ("HIMSS") hereby responds to the Complaint filed by Plaintiff Federal Insurance Company ("Federal" or "Plaintiff") as follows:

**<ins>ANSWER TO PLAINTIFF'S COMPLAINT</ins>**

Pursuant to provisions of Federal Rules of Civil Procedure Rule 8(b)(3), HIMSS denies generally and specifically each and every allegation of Plaintiff's Complaint and the whole thereof except as is hereinafter stated, qualified, or admitted; HIMSS denies that Plaintiff was injured or damaged in the manner specified, or otherwise; and HIMSS further denies that Plaintiff is entitled to the relief claimed, or any relief, on the grounds alleged, or otherwise.

1.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for the purpose of determining an actual controversy

between the parties by construing the rights and legal obligations arising under a contract of insurance issued by Federal.

**ANSWER**:  Paragraph 1 contains legal conclusions to which no response is required.  To the extent a response is required, HIMSS admits that an actual controversy exists between the parties concerning rights, duties and obligations under the policy of ForeFront Portfolio (For Not-for-Profit Organizations) Policy No. 6803-0243 (the "Policy") insurance coverage issued by Federal to HIMSS.  Except as expressly admitted, HIMSS denies any and all remaining allegations in Paragraph 1.

2.      Federal seeks a declaration that it need not defend or indemnify its insured, HIMSS, in connection with: (1) a purported class action complaint filed against HIMSS captioned *Hatchmed* [*sic*] *Corp., et al. v. Healthcare Information and Management Systems Society, Inc*. in the United States District Court for the Northern District of Illinois, Case No. 1:20-CV-03377 (the "Hatchmed Action", attached as "Exhibit A") and (2) a complaint filed against HIMSS captioned *Novarad Corporation v. Healthcare Information and Management Systems Society, Inc.* in Circuit Court of Cook County, Illinois, Case No. 2020-CH-04398 (the "Novarad Action", attached with a notice of removal filed by HIMSS as "Exhibit B", and with the Hatchmed Action the "Underlying Lawsuits").

**ANSWER**:  HIMSS admits that *HatchMed Corp., et al. v. Healthcare Information and Management Systems Society, Inc*. is a putative class action lawsuit filed against HIMSS in the United States District Court for the Northern District of Illinois and that the plaintiffs in that case seek certain relief.  HIMSS admits that *Novarad Corporation v. Healthcare Information and Management Systems Society, Inc.* is a lawsuit filed against HIMSS in the Circuit Court of Cook County, Illinois, and that the plaintiff in that case seeks certain relief.  Except as specifically

2

admitted, HIMSS denies the allegations in Paragraph 2, including the allegation that Federal need not defend nor indemnify HIMSS in connection with the Underlying Lawsuits.

3.      Plaintiff Federal is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business in New Jersey.

**ANSWER**:  HIMSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 and therefore denies the same.

4.      Defendant HIMSS is an Illinois not-for-profit corporation that maintains its principal place of business in Cook County, Illinois.

**ANSWER**:  HIMSS admits the allegations in Paragraph 4.

5.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff and defendant and the amount in controversy, including the potential costs of both defending and indemnifying HIMSS exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER:**  HIMSS admits the allegations in Paragraph 5.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because HIMSS's principal place of business is in this judicial district, the Underlying Lawsuits are pending in this judicial district and many of the acts from which the Underlying Lawsuits originated occurred in the Northern District of Illinois.

**ANSWER**:  HIMSS admits the allegations in Paragraph 6.

7.      An actual controversy within the meaning of 28 U.S.C. § 2201 exists among the parties regarding the coverage provided under policies of insurance.

**ANSWER**:  HIMSS admits that an actual controversy exists within the meaning of 28 U.S.C. § 2201 exists among the parties regarding the coverage provided under the Directors &

3

Officers insurance policy at issue in this case. Except as specifically admitted, HIMSS denies the allegations in Paragraph 7.

8.     HIMSS describes itself as a global advisor and thought leader supporting the transformation of the health ecosystem through information and technology.

**ANSWER**:  HIMSS admits that the description in Paragraph 8, while taken out of context and therefore incomplete, generally describes a significant part of what HIMSS does as an organization. Except as specifically admitted, HIMSS denies the allegations in Paragraph 8.

9.     In furtherance of its principal business activity, HIMSS organizes and hosts a tradeshow each year to bring together healthcare industry leaders. It describes its annual tradeshow as "known for its world-class educational programming, with hundreds of highly vetted sessions from industry leaders, renowned keynote speakers … and hands-on preconference programming.

**ANSWER:**  HIMSS admits that it sponsors the Global Health Conference & Exhibition ("Global Conference"), an annual event. Except as specifically admitted, HIMSS denies the allegations in Paragraph 9.

10.     According to the Hatchmed Action, HIMSS scheduled its 2020 tradeshow to take place from March 9, 2020 through March 13, 2020 in Orlando, Florida (the "Tradeshow"). In its complaint, Hatchmed Corp. alleges that the Tradeshow "attracts more than 1,300 diverse exhibitors…[w]ith thousands of products and services" related to the healthcare field. The Tradeshow was expected to involve numerous leaders in the healthcare industry from the public and private sectors. Notable scheduled speakers for the Tradeshow included President Donald J. Trump.

**ANSWER**:  HIMSS admits that it sponsored the HIMSS 2020 Global Health Conference & Exhibition ("Global Conference"), an annual event that was scheduled to occur in Orlando,

4

Florida from March 9, 2020, through March 13, 2020, and that HatchMed had signed up to be an exhibitor at the Global Conference.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 10, which recite and treat as true certain allegations in the *HatchMed* Complaint.

11.     Upon information and belief, the Tradeshow "is intended to demonstrate products and services for healthcare information and/or technology professionals" and HIMSS has the sole and exclusive discretion to determine the eligibility of exhibitors to participate in the Tradeshow under its exhibitor contracts.

**ANSWER:**  HIMSS admits that the Global Conference has content for healthcare information and/or technology professionals.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 11.

12.     On March 5, 2020, HIMSS announced in a press release that it was cancelling the Tradeshow due to the COVID-19 pandemic.   The press release referred to a HIMSS20 Cancellation FAQ page for more information about the cancellation.

**ANSWER:**  HIMSS admits that it issued a press release on March 5, 2020.  HIMSS further states that the press release speaks for itself; and to the extent the allegations of Paragraph 12 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 12.

13.     The HIMSS20 Cancellation FAQ page provides:

**Why did you wait until now to cancel?**

We made every effort to hold the conference as scheduled and coordinated with an external advisory panel of medical professionals to support evidence-based decision making. However, the situation was evolving so rapidly that each day brought a new development. The fast-evolving circumstances, which were outside of anyone's control, made it clear that it would be an unacceptable risk to bring so many thousands of people together.

\*   \*   \*

**Will exhibitors be refunded for their HIMSS20 booths and sponsorships?**

HIMSS must follow and honor the terms of exhibitor contracts, which include a force majeure clause. As a not-for-profit, and because of its obligations to other parties, HIMSS will honor its partners' rights but, unfortunately, is not in a position to issue cash refunds beyond those provided in our contracts.

\* \* \*

**ANSWER:** HIMSS admits it published a HIMSS20 Cancellation FAQ webpage. HIMSS further states that the webpage speaks for itself; and to the extent the allegations of Paragraph 14 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 13.

14. In a March 13, 2020 interview with "Healthcare IT News", a HIMSS media publication, HIMSS CEO Hal Wolf stated that the "HIMSS Global Conference takes 18 months to prepare", and the decision to cancel the Tradeshow was made by assembling "a group of medical advisors … [which] included epidemiologists, people from all over the country" in order to determine the risk of proceeding with the Tradeshow "purely from a medical standpoint[.]" According to Wolf, continuing with the Tradeshow was no longer a "potentially acceptable risk" once HIMSS reviewed revised numbers on infection and death rates for COVID-19 prepared by the Centers for Disease Control and Prevention and the World Health Organization.

**ANSWER:** HIMSS admits that Healthcare IT News is a publication of HIMSS Media and that Healthcare IT News published an interview with HIMSS CEO Hal Wolf on March 13, 2020, HIMSS further states that the interview speaks for itself; and to the extent the allegations of Paragraph 14 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 14.

15.     Upon information and belief, HIMSS received a letter from Novarad Corporation ("Novarad") on or about March 26, 2020 demanding a refund of a $38,325 exhibitor fee paid by Novarad to HIMSS under a contract for exhibition space at and access to the Tradeshow (the "Novarad Demand Letter", attached as "Exhibit C").

**ANSWER:**  HIMSS admits that it received a letter from Novarad dated March 26, 2020. HIMSS further states that the letter speaks for itself; and to the extent the allegations of Paragraph 15 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 15.

16.     The Novarad Demand Letter alleged that, on March 23, 2020, HIMSS informed Novarad that it would not refund the $38,325 exhibitor fee based on the force majeure clause in its contract.  Novarad contended, however, that the force majeure clause does not allow HIMSS to cancel the Tradeshow while refusing to refund the fee paid by Novarad.  Novarad asserted that the force majeure clause was not triggered because, as of the last day of the Tradeshow (March 13, 2020), "there had been no government-mandated shutdowns and no mandated restrictions on gatherings in Orlando—or anywhere, for that matter" and therefore, it was not impossible for HIMSS to have the Tradeshow, but instead it "simply decided not to do so."  Novarad also asserted that a provision that "purports to disclaim HIMSS's obligation to refund the fee (or to pay associated damages resulting from a cancellation)," would be void on public policy grounds.

**ANSWER:**  HIMSS states that the letter speaks for itself; and to the extent the allegations of Paragraph 16 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 16.

17.     The Novarad Demand Letter contended that, even if the Tradeshow's cancellation was justifiable, HIMSS cannot exercise its business judgment and discretion in a way that allows

it to cancel the Tradeshow while also retaining exhibition fees.  Novarad alleged that it incurred approximately $100,000 in costs to prepare for the Tradeshow, and asserted that HIMSS should be liable for those expenses as well as the $38,325 exhibitor fee Novarad paid.  Nonetheless, the Novarad Demand Letter advised that, for the purpose of a resolution and subject to Federal Rule of Evidence 408, Novarad would accept a refund of the fee to resolve the dispute.

**ANSWER:**  HIMSS states that the letter speaks for itself; and to the extent the allegations of Paragraph 17 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 17.

18.     On April 8, 2020, HIMSS announced that it had been working to "offer meaningful financial remedies" to its exhibitors and that it would be providing most exhibitors a 25% credit of amounts spent on the Tradeshow for future tradeshows in 2021 and 2022.

**ANSWER:**  HIMSS admits that it issued an announcement on April 8, 2020.  HIMSS further states that the announcement speaks for itself; and to the extent the allegations of Paragraph 18 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 18.

19.     On May 19, 2020, Softworks sent a demand letter to HIMSS CEO Hal Wolf, on behalf of itself and various other exhibitors (the "Softworks Demand Letter", attached as "Exhibit D").  The Softworks Demand Letter alleges that exhibitors were "shocked and angry" that HIMSS decided to "retain 100% of the money paid for exhibition space rental citing Force Majeure[.]" Softworks demanded that HIMSS immediately refund the money paid by exhibitors for the Tradeshow.  In addition to Softworks, numerous other exhibitors co-signed the Softworks Demand Letter including, among others, Arcserve, BioBright, Bookzurman, Bridge Patient Portal, CyberMDX, DocVilla, Dolphin Data Capture, Dolbey Systems and Estone Technology.

8

**ANSWER:**  HIMSS admits that Softworks sent a letter dated May 19, 2020, to Mr. Wolf.  HIMSS further states that the letter speaks for itself; and to the extent the allegations of Paragraph 19 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 19.

20.    According to an article published by Jessica Kim Cohen in "Modern Healthcare", HIMSS CEO Hal Wolf responded to the Softworks Demand Letter on May 27, 2020.

**ANSWER**:  HIMSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore denies those allegations.

21.    Upon information and belief, HIMSS's May 27, 2020 response to the Softworks Demand Letter stated that: "[i]n the case of a force majeure event such as the present one, the parties agreed exhibitor fees would not be refundable," and that "[t]he non-refund provision of the force majeure clause in our contract reflects the reality that non-profits like HIMSS have fewer financial tools available when a black-swan event like COVID-19 forces a cancellation."

**ANSWER**:  HIMSS admits that it sent a letter responding to Softworks's letter.  HIMSS further states that HIMSS's letter to Softworks speaks for itself; and to the extent the allegations of Paragraph 21 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 21.

22.    This matter arises out of the Underlying Lawsuits filed against HIMSS by Novarad individually on June 1, 2020 and by Hatchmed Corp. ("Hatchmed") on behalf of itself and a putative class of similarly situated others on June 8, 2020.

**ANSWER**:  HIMSS admits that the *Novarad* Action and the *HatchMed* Action are the Underlying Lawsuits in this coverage dispute with Federal.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 22.

9

23.     The Underlying Lawsuits allege that Novarad, Hatchmed and putative class members executed contracts with HIMSS, which required HIMSS to provide access and floor space at the Tradeshow in consideration of payments made by Novarad, Hatchmed and the putative class members, but HIMSS wrongfully retained these payments after cancelling the Tradeshow in March 2020.  As stated in HIMSS's notice of removal in the Novarad Action, "the complaints in both cases allege, inter alia, that HIMSS breached its contract with each of the plaintiffs by cancelling a global healthcare conference…due to the COVID-19 pandemic but retaining payments each of the plaintiffs had made[.]"

**ANSWER**:  HIMSS states that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 23 vary therewith, HIMSS denies those allegations.  HIMSS admits that it filed a notice of removal in the *Novarad* Action, which speaks for itself.  HIMSS further states that to the extent the allegations of Paragraph 23 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 23.

24.     The Novarad Action alleges that Novarad and HIMSS are parties to a contract dated January 31, 2019 and entitled "HIMSS20 Exhibit Space & Specialty Pavilion Agreement" (the "Novarad Contract" attached as "Exhibit E"), under which Novarad paid $38,325 for exhibition space at, and access to the Tradeshow.

**ANSWER**:  HIMSS states that the *Novarad* Complaint speaks for itself; and to the extent the allegations of Paragraph 24 vary therewith, HIMSS denies those allegations.

25.     The Novarad Contract provides, in relevant part:

**ELIGIBILITY**: The Event exhibition is intended to demonstrate products and services for healthcare information and/or technology professionals. HIMSS shall determine Exhibitor's eligibility to participate in the exhibition, in the sole and

exclusive discretion of HIMSS. HIMSS may refuse rental of exhibit space to Exhibitor, or remove Exhibitor from the Event exhibition hall, if, in the sole and exclusive discretion of HIMSS, Exhibitor's display of goods or services is not compatible with the character and objectives of the Event exhibition. In the event HIMSS initially deems Exhibitor to be eligible to participate in the Event, but later determines that it is not eligible, then Exhibitors prepaid space rental fees and deposits will be forfeited, in accordance with the "Cancellations" provision above.

\* \* \*

**FORCE MAJEURE**: In the event that the performance by HIMSS or the Venue or any part of the exhibit area thereof is unavailable whether for the entire event, or a portion of the event, as a result of fire, flood, tempest, inclement weather, or other such cause or as a result of governmental intervention, malicious damage, acts of God, war, strike, lock-out, labor dispute, riot, terrorist acts, curtailment of transportation, or other cause or agency over which HIMSS has no control, or should HIMSS decide that because of any such cause that it is necessary to cancel, postpone or re-site the event, or reduce the move-in and installation time, exhibition time, or move-out time, HIMSS shall not be liable to refund, indemnify, or reimburse the Exhibitor in respect of any fees paid, damage or loss, direct or indirect, arising as a result thereof.

**ANSWER**:  HIMSS states that it entered into a contract with Novarad which speaks for itself; and to the extent the allegations of Paragraph 25 vary therewith, HIMSS denies those allegations.

26.     The Novarad Action alleges that HIMSS cancelled the Tradeshow, days before it was scheduled to begin, on March 5, 2020 because of the "impending spread of the COVID-19 novel coronavirus."

**ANSWER**:  HIMSS states that the *Novarad* Complaint speaks for itself; and to the extent the allegations of Paragraph 26 vary therewith, HIMSS denies those allegations.

27.     The Novarad Action alleges that HIMSS informed Novarad it would not refund amounts paid under the Novarad Contract based on the contract's force majeure clause. The Novarad Action further alleges that, "[r]egardless of whatever the COVID-19 novel coronavirus

11

would eventually become, as of the date of the Conference's cancellation, as well as of the dates of the Conference's expected opening and closing, the COVID-19 novel coronavirus did not serve as a basis for HIMSS to rely upon the Force Majeure Clause to cancel the Conference."

**ANSWER**:  HIMSS states that the *Novarad* Complaint speaks for itself; and to the extent the allegations of Paragraph 27 vary therewith, HIMSS denies those allegations.

28.     Novarad alleges that "HIMSS has materially breached the Agreement by cancelling the Conference and failing and refusing to refund Novarad the Fee Payment and to compensate it for other damages."

**ANSWER**:  HIMSS states that the *Novarad* Complaint speaks for itself; and to the extent the allegations of Paragraph 28 vary therewith, HIMSS denies those allegations.

29.     The Novarad Action sets forth causes of action for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, quantum meruit, and/or quasi-contract.

**ANSWER**:  HIMSS states that the *Novarad* Complaint speaks for itself; and to the extent the allegations of Paragraph 29 vary therewith, HIMSS denies those allegations.

30.     The Hatchmed Action alleges that pursuant to a contract executed on November 20, 2019, Hatchmed paid $11,075.00 to HIMSS in exchange for access and to exhibit its goods and services at the Tradeshow.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 30 vary therewith, HIMSS denies those allegations.

31.     The Hatchmed Action alleges that as many as one thousand members of the putative class entered into similar contracts with HIMSS for Tradeshow access and floorspace, and that the amount in controversy exceeds $5 million.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 31 vary therewith, HIMSS denies those allegations.

32.  Hatchmed alleges that HIMSS breached its contracts with each member of the putative class by cancelling the Tradeshow due to the COVID-19 pandemic, but unilaterally retaining payments made under these contracts by members of the alleged putative class for access and exhibition space at the Tradeshow.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 32 vary therewith, HIMSS denies those allegations.

33.  The Hatchmed Action seeks class certification on the basis that certain common questions of law exist, including: (1) whether HIMSS breached its contracts to provide access to the Tradeshow by cancelling the Tradeshow and refusing to issue refunds; (2) whether HIMSS complied with its obligations under the contracts; and (3) whether HIMSS has any valid legal defense for this conduct.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 33 vary therewith, HIMSS denies those allegations.

34.  The Hatchmed Action asserts causes of action for breach of contract, unjust enrichment, and promissory estoppel.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 34 vary therewith, HIMSS denies those allegations.

35.  Hatchmed alleges that it and the putative class members were wrongfully deprived of amounts paid to HIMSS and in the absence of the Hatchmed Action, HIMSS would retain the benefits of this wrongdoing.

**ANSWER**:  HIMSS states that the *HatchMed* Complaint speaks for itself; and to the extent the allegations of Paragraph 35 vary therewith, HIMSS denies those allegations.

36.     Federal issued ForeFront Portfolio (For Not-for-Profit Organizations) Policy No. 6803-0243 (the "Policy", attached as "Exhibit F"), effective for the period October 1, 2019 through October 1, 2020, which was extended by endorsement to October 31, 2020 (the "Policy Period"), to HIMSS, the Named Insured.  The Policy's Directors & Officers and Entity Liability Coverage Part (the "D&O Coverage Part") has a $10,000,000 aggregate limit of liability subject to a $25,000 Retention under Insuring Clause 3.

**ANSWER**:  HIMSS admits the allegations in Paragraph 36.

37.     On June 23, 2020, HIMSS provided notice of the Hatchmed Action under the Policy via email correspondence from its insurance broker to Federal.  In the email chain providing this notification, HIMSS advised it "would like to retain Latham & Watkins as they are handling the underlying insurance claim."

**ANSWER**:  HIMSS admits the allegations in Paragraph 37.

38.     In a July 31, 2020 article published by Susan Morse in "Healthcare Finance", a publication of HIMSS Media, it was reported that HIMSS CEO Hal Wolf stated that "[w]hen the cancellation took place (for) HIMSS20, the contractual environment limited us to how we could respond" to exhibitors.  Wolf further stated that the "insurance process" limited HIMSS's response and that "[t]hose negotiations are ongoing."  Wolf further stated that it is HIMSS's "intent, once we are resolved on our [insurance] claim…to come forward with additional remedies at that time[.]"  Wolf further advised that HIMSS's "contract stipulates all costs and fees are held by HIMSS but the company turned around and gave exhibitors a 25% credit for HIMSS21 and

HIMSS22, by applying 15% to HIMSS21 and 10% to HIMSS22" resulting in HIMSS spending "over $7 million out-of-pocket."

**ANSWER:** HIMSS admits that Healthcare Finance is a publication of HIMSS Media and that Healthcare Finance published an article by Susan Morse on July 31, 2020. HIMSS further states that the article speaks for itself; and to the extent the allegations of Paragraph 38 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 38.

39. By letter dated August 7, 2020, Federal denied that it owes a duty to defend or indemnify HIMSS for the Hatchmed Action under the Policy. This letter advised that "[i]f you disagree with the declination of coverage set forth in this letter, then Chubb asks that you advise it of the reasons for any such disagreement within 30 days. If there is a dispute as to coverage, including any duty to defend, to preserve coverage defenses under applicable law, Chubb may need to file an action for declaratory judgment."

**ANSWER**: HIMSS admits it received a letter from Federal dated August 7, 2020. HIMSS further states that this letter speaks for itself; and to the extent the allegations of Paragraph 39 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 39.

40. On September 24, 2020, Federal sent a follow-up letter to HIMSS asking that it advise whether HIMSS disagreed with Federal's denial of coverage under the Policy and requesting that HIMSS enter into a non-waiver agreement if it disagreed with Federal's coverage position in order to obviate the need for coverage litigation.

**ANSWER**: HIMSS admits that HIMSS received a letter dated September 24, 2020, from Federal. HIMSS further states that the letter dated September 24, 2020, speaks for itself; and to

15

the extent the allegations of Paragraph 40 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 40.

41.     By email correspondence dated November 3, 2020, HIMSS provided notice of the Hatchmed Action under two additional policies issued by Federal and another Chubb company, Great Northern Insurance Company. HIMSS has since confirmed that it does not seek coverage for the Underlying Lawsuits under those additional policies. The November 3, 2020 email described the Underlying Lawsuits as follows: "[p]laintiff's sued defendant for its unilateral decision to keep all of the money paid by defendants to plaintiff for tradeshows which have been cancelled." This notification listed HIMSS General Counsel Ilene Wolf Moore as the point of contact for insurance purposes. HIMSS did not, however, respond or otherwise address Federal's August 7, 2020 or September 24, 2020 letters.

**ANSWER**:  HIMSS states that any alleged email correspondence speaks for itself; and to the extent the allegations of Paragraph 41 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 41.

42.     On November 5, 2020, Federal sent another letter to HIMSS asking whether it disagreed with Federal's coverage position under the Policy, and requesting that HIMSS consider entering into the previously provided non-waiver agreement if it disagreed with Federal's coverage position to obviate the need for coverage litigation.

**ANSWER**:  HIMSS admits that Federal sent a letter dated November 5, 2020. HIMSS further states that the letter dated November 5, 2020, speaks for itself; and to the extent the allegations of Paragraph 42 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 42.

43.     By letter dated November 10, 2020, HIMSS's outside counsel, Latham & Watkins, responded to Federal's August 7, 2020 letter denying coverage under the Policy.  Latham & Watkins advised that HIMSS disputes Federal's coverage position and demanded that Federal withdraw its denial of coverage and provide coverage under the Policy for the Hatchmed Action. This letter did not respond to Federal's request that HIMSS consider entering into a non-waiver agreement in order to obviate the need for coverage litigation.

**ANSWER**:  HIMSS admits that its outside counsel, Latham & Watkins, LLP, sent a letter to Federal on August 7, 2020.  HIMSS further states that this letter speaks for itself; and to the extent the allegations of Paragraph 43 vary therewith, HIMSS denies those allegations.  Except as expressly admitted, HIMSS denies the allegations in Paragraph 43.

44.     On November 16, 2020, Federal filed its initial complaint in the instant action for declaratory relief that no coverage was available under the Policy (the "Coverage Action").

**ANSWER**:  HIMSS admits the allegations in Paragraph 44.

45.     According to filings in the Underlying Lawsuits, on November 17, 2020, the parties in the Hatchmed Action attended a mediation session with the Honorable Wayne R. Andersen (Ret.).

**ANSWER**:  HIMSS states that the filings in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 45 vary therewith, HIMSS denies those allegations. Except as expressly admitted, HIMSS denies the allegations in Paragraph 45.

46.     On November 18, 2020, after Federal had commenced the Coverage Action, HIMSS provided notice to Federal of the Novarad Action under the Policy.  This notification also listed HIMSS General Counsel Ilene Wolf Moore as the point of contact for insurance purposes.

17

**ANSWER**: HIMSS admits that it provided notice to Federal of the *Novarad* Action. Except as expressly admitted, HIMSS denies the allegations in Paragraph 46.

47. On January 11, 2021, the parties in the Hatchmed Action filed a "Notice of Settlement and Joint Motion to Stay Case Deadlines" advising the court that "[t]he parties now report that they have reached an agreement in principle subject to reaching agreement on all remaining terms and preparing a definitive written settlement agreement."

**ANSWER**: HIMSS states that the filings in the *HatchMed* Action speak for themselves; and to the extent the allegations of Paragraph 47 vary therewith, HIMSS denies those allegations. Except as expressly admitted, HIMSS denies the allegations in Paragraph 47.

48. By letter dated January 22, 2021, Federal denied that it owes a duty to defend or indemnify HIMSS for the Novarad Action under the Policy.

**ANSWER**: HIMSS admits the allegations in Paragraph 48.

49. On January 25, 2021, the parties in the Hatchmed Action reported to the court "that they have drafted a written settlement agreement as well as notice forms, a claim form and a proposed preliminary approval order, which they are now working to finalize."

**ANSWER**: HIMSS states that the filings in the *HatchMed* Action speak for themselves; and to the extent the allegations of Paragraph 49 vary therewith, HIMSS denies those allegations. Except as expressly admitted, HIMSS denies the allegations in Paragraph 49.

50. On January 29, 2021, the parties in the Novarad Action filed a "Joint Motion to Stay Case Deadlines" stating that "[t]he parties now report that they, along with the plaintiff in HatchMed, have reached an agreement in principle, subject to reaching agreement on all remaining terms and preparing a definitive written settlement agreement, for Novarad to join HatchMed Corp.

18

as a Named Plaintiff in HatchMed and representative of the proposed class for purposes of the anticipated settlement in that case."

**ANSWER**:  HIMSS states that the filings in the *HatchMed* Action speak for themselves; and to the extent the allegations of Paragraph 50 vary therewith, HIMSS denies those allegations. Except as expressly admitted, HIMSS denies the allegations in Paragraph 50.

51.     To date, HIMSS has not filed an answer or otherwise responded to the complaints in either the Novarad Action or the Hatchmed Action.

**ANSWER:**  HIMSS admits it has not filed an answer in either the *Novarad* Action or the *HatchMed* Action.  Except as expressly admitted, HIMSS denies the allegations in Paragraph 51.

52.     HIMSS did not notify Federal or otherwise report either the Novarad Demand Letter or the Softworks Demand Letter under the Policy, and has not provided Federal with copies of any correspondence issued in response to those letters.

**ANSWER:**  HIMSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and therefore denies those allegations.

## COUNT I

53.     Federal reasserts and incorporate by reference Paragraphs 1 through 52 as if fully set forth herein.

**ANSWER**:  HIMSS incorporates its answers to the allegations in Paragraphs 1 through 52 as if fully set forth herein.

54.     Endorsement No. 6 of the Policy's D&O Coverage Part provides that no coverage will be available for "Loss" on account of any "Claim" based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the

19

rendering of, or actual or alleged failure to render, any "Professional Services" for others by any person or entity otherwise entitled to coverage under the D&O Coverage Section, provided, however, that this exclusion shall not apply to any "Specific Management Claim" (the "Professional Services Exclusion").

**ANSWER**:  HIMSS admits that Endorsement No. 6 of the Policy's D&O Coverage Part contains language that is fairly referred to as a Professional Services Exclusion, which language speaks for itself.  To the extent the allegations of Paragraph 54 vary therewith, HIMSS denies those allegations.

55.     **"Professional Services"** is defined by Endorsement No. 6 of the D&O Coverage Part to mean "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this policy."

**ANSWER**:  HIMSS states that the language in Endorsement No. 6 of the Policy's D&O Coverage Part speaks for itself.  To the extent the allegations of Paragraph 55 vary therewith, HIMSS denies those allegations.  Except as expressly admitted, HIMSS denies the allegations in Paragraph 55.

56.     HIMSS's planning, organization and decision to cancel the Tradeshow constitutes "professional services" as they are business activities involving specialized knowledge, labor and skill, and are predominantly mental or intellectual.  HIMSS describes its principal business as "a global advisor and thought leader supporting the transformation of the health ecosystem through information and technology."  Specifically, HIMSS states that "[t]hrough our innovation engine, HIMSS delivers key insights, education and engaging events to healthcare providers, governments

and market suppliers, ensuring they have the right information at the point of decision."  The planning, organization and cancellation of the Tradeshow involved and was in connection with HIMSS's exercise of its business judgment in conducting its principal business activity of educating and providing information to parties in the healthcare industry.

**ANSWER**:  HIMSS denies the allegations in paragraph 56.

57.     The Underlying Lawsuits are based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any "Professional Services."  Therefore, the Professional Services Exclusion precludes coverage for the Underlying Lawsuits, and Federal has no duty to defend or indemnify HIMSS under the Policy.

**ANSWER**:  HIMSS denies the allegations in paragraph 57.

58.     An actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits as HIMSS continues to tender this matter for coverage.  Accordingly, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

**WHEREFORE**, Federal requests a judgment against HIMSS as follows:

i.      Declare that the Professional Services Exclusion applies to the Underlying Lawsuits and the Policy does not cover any loss, expense, or other relief arising out of, or in any way related to the Underlying Lawsuits;

ii.     Declare Federal owes no duty to defend or indemnify HIMSS for the Underlying Lawsuits under the Policy; and

iii.    Award Federal any other relief that this Court deems just and appropriate.

21

**ANSWER**:  HIMSS admits that an actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits. Except as specifically admitted, HIMSS denies the allegations in Paragraph 58 and asks that Federal take nothing by its Complaint.

### COUNT II

59.     Federal reasserts and incorporates by reference Paragraphs 1 through 58 as if fully set forth herein.

**ANSWER**:  HIMSS incorporates its answers to the allegations in Paragraphs 1 through 58 as if fully set forth herein.

60.     Subsection 6 of the Policy's D&O Coverage Part provides that Federal shall not be liable under Insuring Clause 3 for "Loss," other than "Defense Costs," on account of any "Claim" based upon, arising from, or in consequence of any actual or alleged liability of an Organization under any written or oral contract or agreement, provided that this exclusion shall not apply to the extent that the Organization would have been liable in the absence of such contract or agreement (the "Contract Exclusion").

**ANSWER**:  HIMSS admits that Subsection 6 of the Policy's D&O Coverage Part contains language fairly described as a "Contract Exclusion," which language speaks for itself.  To the extent the allegations of Paragraph 60 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 60.

61.     The plaintiffs' claims in the Underlying Lawsuits are based upon, arise from and are in consequence of HIMSS's contracts with its customers and HIMSS's invocation of force majeure provisions to deny refunds under such contracts.

**ANSWER**:  HIMSS states that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 61 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 61.

62.    The Underlying Lawsuits are based upon, arising from, or in consequence of the actual or alleged liability of HIMSS under written or oral contracts or agreements, and HIMSS would not have any liability in the absence of such contracts or agreements.  Therefore, Federal has no duty to indemnify HIMSS under the Policy.

**ANSWER**:  HIMSS states that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 62 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 62.

63.    An actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits as HIMSS continues to tender these matters for coverage.  Accordingly, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

**WHEREFORE**, Federal requests a judgment against HIMSS as follows:

    i.    Declare that the Contract Exclusion applies to the Underlying Lawsuits and the Policy does not cover any settlement, judgment, award, or other relief arising out of, or in any way related to the Underlying Lawsuits;

    ii.    Declare that Federal has no obligation to indemnify HIMSS in connection with the Underlying Lawsuits under the Policy;

    iii.    Award Federal any other relief that this Court deems just and appropriate.

**ANSWER**:  HIMSS admits that an actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits.

Except as specifically admitted, HIMSS denies the allegations in Paragraph 63 and asks that Federal take nothing by its Complaint.

<u>**COUNT III**</u>

64.     Federal reasserts and incorporates by reference Paragraphs 1 through 63 as if fully set forth herein.

**ANSWER**:  HIMSS incorporates its answers to the allegations in Paragraphs 1 through 63 as if fully set forth herein.

65.     Insuring Clause 3 of the Policy's D&O Coverage Part obligates Federal to pay, subject to the Policy's other terms and conditions, "**Loss**" which HIMSS becomes legally obligated to pay on account of any "**Claim**" for a "**Wrongful Act**" and provides that Federal will have the duty to defend HIMSS against any "**Claim**" covered by the D&O Coverage Part.  The Policy's "**Loss**" definition includes amounts that HIMSS is legally obligated to pay on account of a "**Claim**", but does not include, among other things, amounts that are uninsurable under applicable law.  Federal has no obligation under the D&O Coverage Section, to pay for amounts which do not constitute "**Loss**" as defined in the Policy.

**ANSWER**:  HIMSS admits that Insuring Clause 3 of the Policy's D&O Coverage Part contains language addressing Federal's obligation to pay "**Loss**" arising from "**Claims**" for a "**Wrongful Act**," which language speaks for itself.  To the extent the allegations of Paragraph 65 vary therewith, HIMSS denies those allegations.  Except as specifically admitted, HIMSS denies the allegations in Paragraph 65.

66.     The Underlying Lawsuits do not seek "**Loss**" as defined by the Policy's D&O Coverage Part. Instead, the Underlying Lawsuits seek the return of amounts paid to HIMSS pursuant to various contracts, and which HIMSS allegedly improperly retained after it failed to

24

perform under the contracts. As the Underlying Lawsuits seek the return of ill-gotten gain, which is uninsurable under the law, the **Claim** does not seek "**Loss**" as that term is defined by the Policy's D&O Coverage Part.

**ANSWER**: HIMSS states that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 66 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 66.

67. Additionally, the Underlying Lawsuits seek the return of amounts paid to HIMSS pursuant to contracts, or damages resulting from such retention, as a result of HIMSS's failure to perform under its contracts. Payments required for voluntarily undertaken contractual obligations are not amounts which HIMSS is "legally obligated" to pay and do not constitute "**Loss**" under the Policy's D&O Coverage Section.

**ANSWER**: HIMSS states that that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 67 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 67.

68. The Underlying Lawsuits seek the return of ill-gotten gain or amounts which are otherwise uninsurable, and for which HIMSS is not legally obligated to pay, and such amounts do not constitute a "Loss" under the Policy. Therefore, Federal has no duty to indemnify HIMSS under the Policy for the Underlying Lawsuits.

**ANSWER**: HIMSS states that the complaints in the Underlying Lawsuits speak for themselves; and to the extent the allegations of Paragraph 68 vary therewith, HIMSS denies those allegations. Except as specifically admitted, HIMSS denies the allegations in Paragraph 68.

69.     An actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits as HIMSS continues to tender this matter for coverage.  Accordingly, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

**WHEREFORE**, Federal requests a judgment against HIMSS as follows:

    i.    Declare that the Underlying Lawsuits seek amounts that are not a "**Loss**" under the Policy, and coverage is not available under the Policy for a settlement or judgment in the Underlying Lawsuits;

    ii.    Declare Federal has no obligation to indemnify HIMSS in connection with the Underlying Lawsuits under the Policy; and

    iii.    Award Federal any other relief that this Court deems just and appropriate.

**ANSWER**:  HIMSS admits that an actual controversy exists between Federal and HIMSS with respect to Federal's obligations under the Policy in connection with the Underlying Lawsuits. Except as specifically admitted, HIMSS denies the allegations in Paragraph 69 and asks that Federal takes nothing by its Complaint.

70.     The Policy contains other terms, conditions, and exclusions that may be relevant to the Underlying Lawsuits.  Nothing in this complaint should be construed as a waiver by Federal of any coverage defenses under the Policy.  Federal continues to reserve the right to raise all other terms, conditions, and exclusions as defenses to coverage for any claim made under the Policy, or any other policy issued by Federal where appropriate.

**ANSWER**:  HIMSS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 and therefore denies the same.  HIMSS asks that Federal takes nothing by its Complaint.

## **AFFIRMATIVE DEFENSES**

26

HIMSS alleges the following as separate and distinct affirmative defenses to each cause of action:

## FIRST AFFIRMATIVE DEFENSE

### (Bad Faith)

HIMSS is informed and on that basis alleges that Federal has acted in bad faith in connection with the acts and events alleged in the Complaint, and this bad faith conduct extinguishes or reduces any relief or damages sought in any of the alleged causes of action.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

HIMSS is informed and believes and on that basis alleges that Plaintiff has engaged in conduct and activity such that its claims for damages or any other relief against HIMSS are barred by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

HIMSS is informed and believes and thereupon alleges that Plaintiff has engaged in conduct and activities sufficient to constitute a waiver of any claim or cause of action which it may otherwise have had against HIMSS.

## FIFTH AFFIRMATIVE DEFENSE

### (Excuse of Performance)

Any alleged failure of HIMSS to perform conditions of any contracts at issue resulted from Plaintiff's failure to perform its duties under its contracts with HIMSS, and Plaintiff is therefore barred from recovering any damages sought in any of the alleged causes of action.

### SIXTH AFFIRMATIVE DEFENSE

### (No Injury or Damage)

Plaintiff has not been injured or damaged in any way or in any manner as a result of any alleged act, conduct, or omission of HIMSS, and Plaintiff is not entitled to the relief claimed, or any relief, on the grounds alleged, or otherwise.

### SEVENTH AFFIRMATIVE DEFENSE

### (HIMSS Recovery of Attorneys' Fees)

HIMSS intends to seek recovery of its attorneys' fees incurred herein on the ground that Plaintiff's causes of action were not filed or maintained in good faith and with reasonable cause.

### NINTH AFFIRMATIVE DEFENSE

### (Notice of Additional Defenses)

HIMSS has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. HIMSS reserves the right to identify any additional affirmative defenses, which further discovery may reveal.

### COUNTERCLAIMS AGAINST PLAINTIFF

HIMSS, by and through its undersigned counsel, for its counterclaims against Plaintiff Federal, alleges as follows:

1.     These counterclaims arise from Federal's breach of the Policy, including but not limited to its refusal to defend HIMSS in the Underlying Lawsuits.

28

2.      Federal has justified its refusal to defend on grounds that are plainly lacking in merit and rely on a strained, patently unreasonable interpretation of the allegations of the Underlying Lawsuits.

3.      Federal's refusal to defend HIMSS is unreasonable and vexatious.  HIMSS paid substantial premiums to Federal for the defense and indemnity coverage provided by the Policy, and it did so for commercial reasons that include the avoidance of the burden and expense of defending lawsuits like the ones filed by Novarad and HatchMed.  Far from relieving HIMSS of this expense and burden, Federal has not only refused to defend these lawsuits but, by filing this action, is now forcing HIMSS to fight a two-front war and incur legal expenses in multiple litigations.

## THE PARTIES AND JURISDICTION

4.      HIMSS is an Illinois not-for-profit corporation with its principal place of business in Cook County, Illinois.  HIMSS is a mission-driven non-profit that organizes the Global Conference to deliver insights and education to healthcare providers, governments, and others to ensure they have the right information.

5.      On information and belief, Federal is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business in New Jersey.

6.      This Court has supplemental jurisdiction over HIMSS's counterclaims pursuant to 28 U.S.C. § 1367(a) because HIMSS's counterclaims form part of the same case or controversy under Article III of the United States Constitution.

## ADDITIONAL ALLEGATIONS

**A.    The Policy**

7.      Federal, in consideration of substantial premiums paid by HIMSS, issued the Policy covering the Policy Period October 1, 2019, to October 1, 2020.

8.      The Policy contains the following basic coverage position, "[Federal] shall pay, on behalf of the **Organization**, **Loss** which the **Organization** becomes legally obligated to pay on account of any **Claim** first made against the **Organization** during the **Policy Period** . . . for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or in the **Insured Persons** before or during the **Policy Period**." ECF No. 26-6 at 42. HIMSS is the **Organization** referred to in the Policy and **Loss** is expressly defined by the Policy to include damages (including punitive or exemplary damages), judgments, settlements, and **Defense Costs**. The Policy defines **Defense Costs** as "reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) . . . incurred in defending any Claim and the premium for appeal, attachment or similar bonds." ECF No. 26-6 at 43.

**B.    HIMSS Cancels the Global Conference Due to COVID-19**

9.      HIMSS annually organizes a Global Conference to provide a forum for the delivery and exchange of insights and education to and among healthcare providers, governments, and others.

10.     In order to host the Global Conference, HIMSS leases a convention center in the host city.

11.     As part of the Global Conference, HIMSS sponsors, delivers, or facilitates the delivery of educational content to attendees. These activities needed to be cancelled when, as discussed below, the Global Conference was cancelled.

30

12.     As another aspect of the Global Conference, HIMSS subleases unimproved floor space at the host convention center to third-party "exhibitors" who desire to exhibit their products and services to conference attendees.  This latter activity – the non-professional subleasing of unimproved floor space – is one of the key issues in the Underlying Lawsuits and lies at the heart of this Coverage Action.

13.     The 2020 Global Conference was scheduled to take place at the Orange County Convention Center in Orlando, Florida from March 9, 2020, through March 13, 2020.  Tens of thousands of attendees and well over one thousand exhibitors and their employees and staff were expected to attend.

14.     In the days leading up to the 2020 Global Conference, HIMSS consulted with an independent panel of public health and medical experts and determined that holding the conference as planned posed an unacceptable risk given the COVID-19 outbreak.  After reaching this conclusion, HIMSS was necessarily forced to cancel the Global Conference.

**C.      The Underlying Lawsuits**

15.     On June 1, 2020, Novarad Corporation, an entity that had signed up to sublease floor space in order to be an exhibitor at the 2020 Global Conference, filed a complaint in the Circuit Court of Cook County, Illinois against HIMSS purporting to allege claims for breach of contract, breach of the implied covenant of good faith and faith dealing, and unjust enrichment. *Novarad Corp. v. HIMSS*, Case No. 2020CH04398 (Ill. Cir. Ct. June 1, 2020) (the "*Novarad* Lawsuit" and "*Novarad* Complaint").  The *Novarad* Lawsuit seeks various forms of relief, including damages for harm incurred by Novarad as a consequence of HIMSS's allegedly wrongful conduct.

31

16.     HIMSS has incurred, and will continue to incur, costs and expenses in its defense of the *Novarad* Lawsuit. HIMSS has attempted to work cooperatively with Federal in the defense of this matter pursuant to the Policy, but Federal has stated in writing that it will not defend the *Novarad* Lawsuit on three grounds.

17.     First, Federal asserts that coverage is barred by the so-called Professional Services Exclusion in the Policy. Federal takes this position despite the fact that the *Novarad* Lawsuit does not allege a failure to provide professional services or any harm arising out of professional services; instead, the claim relates only to HIMSS's alleged failure to provide unimproved floor space at a convention center – an activity that cannot reasonably be described as "professional" under Illinois law.

18.     Second, Federal asserts that the so-called Contract Exclusion bars coverage. Federal persists in this position, even though the Policy provides that Federal must defend even those claims potentially or actually excluded by the Contract Exclusion (a fact that Federal admits in its Complaint). Further, the *Novarad* Complaint expressly seeks to allege grounds for liability (including unjust enrichment and Quantum Meruit) that it alleges are independent of Novarad's claim for breach of contract and therefore would not be barred by the Contract Exclusion.

19.     Third, Federal asserts that the relief sought in the *Novarad* Lawsuit is somehow limited to reimbursement of exhibitor fees and (according to Federal) would thus fail to satisfy the definition of "Loss" in the Policy. Federal takes this position despite the fact that the *Novarad* Complaint, on its face, seeks other relief in addition to the return of fees, including "actual, compensatory, and consequential damages" that could include hotel and travel expenses or the non-recoverable costs of preparing exhibit displays.

20.    On June 8, 2020, HatchMed Corporation, another entity that had signed up to sublease floor space in order to be an exhibitor at the 2020 Global Conference, filed a putative class action lawsuit in the U.S. District Court for the Northern District of Illinois against HIMSS (the "*HatchMed* Lawsuit").  On March 3, 2021, the plaintiffs in the *HatchMed* Action filed an amended complaint that, among other changes, adds Novarad as a plaintiff to the *HatchMed* Action (the "Amended *HatchMed* Complaint").  A true and correct copy of the Amended *HatchMed* Complaint is attached as "Exhibit A."  The Amended *HatchMed* Complaint purports to allege claims for breach of contract, unjust enrichment, and promissory estoppel.  The Amended *HatchMed* Complaint seeks various forms of relief, including damages for harm incurred by exhibitors as a consequence of HIMSS's allegedly wrongful conduct.

21.    HIMSS has incurred, and will continue to incur, significant costs and expenses in its defense of the *HatchMed* Lawsuit.  HIMSS has attempted to work cooperatively with Federal in the defense of this matter pursuant to the Policy, but Federal has stated in writing that it will not defend the *HatchMed* Lawsuit on the same three meritless grounds as Federal has asserted in denying coverage as to the *Novarad* Lawsuit.

**D.    Federal's Unreasonable and Vexatious Conduct**

22.    Despite unambiguous policy language and clear underlying allegations obligating Federal to defend HIMSS in both the *HatchMed* and *Novarad* Lawsuits, Federal has refused to pay reasonable and necessary defense costs incurred by HIMSS.

23.    After HIMSS learned of the *HatchMed* Lawsuit, HIMSS gave notice to Federal, which Federal acknowledged in a letter dated June 25, 2020.  After HIMSS learned of the *Novarad* Lawsuit, HIMSS also provided notice to Federal, which Federal acknowledged in an email on November 25, 2020.

33

24.     In a letter dated August 7, 2020, Federal informed HIMSS that "there is no coverage for the Hatchmed [*sic*] Action, and Chubb [Federal] will neither defend nor indemnify the Insured." The grounds that Federal cited for denying coverage are not colorable reasons to deny coverage.

25.     All of the asserted grounds for denying coverage were unreasonable. At a minimum, Federal should have been defending under a reservation of rights.

26.     In a detailed letter to Federal dated November 10, 2020, outside counsel for HIMSS explained in detail why Federal's coverage positions were incorrect.

27.     In the letter from its outside counsel, HIMSS requested and demanded that Federal withdraw its denial of coverage and agree to reimburse HIMSS for all past and ongoing Defense Costs.

28.     Rather than respond substantively to HIMSS's detailed refutations of Federal's claimed grounds for denying coverage, on November 16, 2020, Federal simply filed the above-referenced Complaint with this Court, seeking declaratory relief that it is not obligated to defend HIMSS. Almost four months after receiving HIMSS's detailed explanation of its entitlement to coverage, Federal has not even responded to the November 10, 2020 letter; to the contrary, it has persisted in maintaining this preemptive Coverage Action. Further, Federal is now forcing HIMSS to incur the expense and burden of coverage litigation at the same time HIMSS must defend two Underlying Lawsuits.

29.     On November 18, 2020, HIMSS's broker provided Federal with notice of the *Novarad* Lawsuit. On November 25, 2020, Chubb (acting on behalf of Federal), emailed HIMSS's former General Counsel, Ms. Ilene Moore, to confirm that it had received notice of the *Novarad* claim. On December 9, 2020, Mr. Bruce Robbibaro from Chubb called and left a short voicemail

34

for Ms. Moore stating that Chubb was denying coverage as to the *Novarad* claim under the Policy based on the inapplicable Professional Services Exclusion. Mr. Robbibaro stated that he was "working on a letter" (presumably to provide a reasoned explanation for this denial). HIMSS finally received a letter from Chubb on January 22, 2021, again citing grounds for denying coverage, this time as to the *Novarad* Lawsuit, that are not colorable.

## **FIRST CAUSE OF ACTION**

### **(Declaratory Judgment that Coverage is Provided as to the *HatchMed* Lawsuit)**

30.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 29 hereof, as if fully set forth herein.

31.     The Policy is an insurance contract under which HIMSS paid Federal premiums in exchange for Federal's promise to defend HIMSS in the event of a Claim made against HIMSS for an allegedly Wrongful Act during the Policy Period.

32.     HIMSS has timely performed all conditions and covenants required under the 2019-2020 D&O Policy.

33.     The allegations of the *HatchMed* Lawsuit are sufficiently broad to create a potential for coverage under the Policy and therefore trigger Federal's duty to defend.

34.     Federal has denied that it has an obligation to defend or indemnify HIMSS in connection with the *HatchMed* Lawsuit.

35.     There is an actual and substantial controversy between HIMSS and Federal based on Federal's denial of its duty to defend or indemnify HIMSS and its failure to pay ongoing defense costs incurred by HIMSS in the *HatchMed* Lawsuit.

36.     HIMSS seeks a declaratory judgment that the Policy obligates Federal to defend and indemnify HIMSS in connection with the *HatchMed* Lawsuit.

37.     This declaratory judgment will serve a useful purpose by clarifying and settling the parties' rights and duties under the Policy.

## SECOND CAUSE OF ACTION

**(Breach of Contract as to Duty to Defend as to the *HatchMed* Lawsuit)**

38.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 37 hereof, as if fully set forth herein.

39.     Federal has breached its obligations under the D&O Policy by wrongfully failing to provide coverage for the *HatchMed* Lawsuit and by withholding defense costs incurred by HIMSS that are covered under the Policy.

40.     As a result of Federal's breach of its obligations (including, without limitation, the duty to defend) the Policy, HIMSS has sustained substantial damages for which Federal is liable, in an amount to be established at trial.

## THIRD CAUSE OF ACTION

**(Statutory Penalty for Bad Faith Denial of Insurance as to the *HatchMed* Lawsuit)**

41.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 40 hereof, as if fully set forth herein.

42.     HIMSS has timely performed all conditions and covenants required under the Policy.

43.     The Policy obligates Federal to provide coverage for the *HatchMed* Lawsuit. Federal has acted vexatiously and unreasonably in its denial of coverage as to the *HatchMed* Lawsuit, including without limitation: (a) taking unreasonable positions with respect to the application of the allegations of the *HatchMed* Lawsuit to the terms and conditions of the Policy (including an interpretation of the Professional Services Exclusion that effectively renders illusory

36

any purported coverage under the Policy); (b) failing to provide a reasoned response to HIMSS's November 10, 2020, coverage letter; and (c) filing this coverage lawsuit rather than engaging in meaningful adjustment of the claim.

44.     Therefore, pursuant to 215 ILCS 5/155, HIMSS requests that, in addition to entering a judgment in favor of HIMSS and against Federal for the amount owed under the Policy at the time of judgment based on the *HatchMe*d Lawsuit, the Court enter a judgment in favor of HIMSS for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that HIMSS is entitled to recover under the Policy, exclusive of costs; or (2) $60,000.  HIMSS also requests all other relief that may be available under common law, contract, statute or in equity, including without limitation an award of its attorney's fees and costs to establish coverage.

### FOURTH CAUSE OF ACTION

**(Declaratory Judgment that Coverage is Provided as to the *Novarad* Lawsuit)**

45.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 44 hereof, as if fully set forth herein.

46.     The Policy is an insurance contract under which HIMSS paid Federal premiums in exchange for Federal's promise to defend HIMSS in the event of a Claim made against HIMSS for an allegedly Wrongful Act during the Policy Period.

47.     HIMSS has timely performed all conditions and covenants required under the Policy.

48.     The allegations of the *Novarad* Lawsuit are sufficiently broad to create a potential for coverage under the Policy and therefore trigger Federal's duty to defend.

49.     Federal has denied that it has an obligation to defend or indemnify HIMSS in connection with the *Novarad* Lawsuit.

50.     There is an actual and substantial controversy between HIMSS and Federal based on Federal's denial of its duty to defend or indemnify HIMSS and its failure to pay ongoing defense costs incurred by HIMSS in the *Novarad* Lawsuit.

51.     HIMSS seeks a declaratory judgment that the Policy obligates Federal to defend and indemnify HIMSS in connection with the *Novarad* Lawsuit.

52.     This declaratory judgment will serve a useful purpose by clarifying and settling the parties' rights and duties under the Policy.

**FIFTH CAUSE OF ACTION**

**(Breach of Contract as to Duty to Defend as to the *Novarad* Lawsuit)**

53.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 52 hereof, as if fully set forth herein.

54.     Federal has breached its obligations under the Policy by wrongfully failing to provide coverage for the *Novarad* Lawsuit and by withholding defense costs incurred by HIMSS that are covered under the Policy.

55.     As a result of Federal's breach of its obligations (including, without limitation, the duty to defend) the Policy, HIMSS has sustained substantial damages for which Federal is liable, in an amount to be established at trial.

**SIXTH CAUSE OF ACTION**

**(Statutory Penalty for Bad Faith Denial of Insurance as to the HatchMed Lawsuit)**

56.     HIMSS incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 55 hereof, as if fully set forth herein.

57.     HIMSS has timely performed all conditions and covenants required under the Policy.

58. The Policy obligates Federal to provide coverage for the *Novarad* Lawsuit. Federal has acted vexatiously and unreasonably in its denial of coverage as to the *Novarad* Lawsuit, including without limitation: (a) taking unreasonable positions with respect to the application of the allegations of the *Novarad* Lawsuit to the terms and conditions of the Policy (including an interpretation of the Professional Services Exclusion that effectively renders illusory any purported coverage under the Policy); (b) providing a written explanation of its denial of coverage only months after being provided notice of the *Novarad* claim while taking these unreasonable positions; and (c) repeatedly contacting a since-departed representative of HIMSS while failing to engage in meaningful or timely adjustment of the *Novarad* claim.

59. Therefore, pursuant to 215 ILCS 5/155, HIMSS requests that, in addition to entering a judgment in favor of HIMSS and against Federal for the amount owed under the Policy at the time of judgment based on the HatchMed Lawsuit, the Court enter a judgment in favor of HIMSS for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that HIMSS is entitled to recover under the Policy, exclusive of costs; or (2) $60,000. HIMSS also requests all other relief that may be available under common law, contract, statute or in equity, including without limitation an award of its attorney's fees and costs to establish coverage.

WHEREFORE, HIMSS prays for judgment against Federal as follows:

**On the First Cause of Action**

1. For an order declaring that the Policy obligates Federal to defend and indemnify HIMSS in connection with the *HatchMed* Lawsuit.

**On the Second Cause of Action**

1. For compensatory damages in an amount to be proven at trial, including attorneys' fees, costs and expenses and interest thereon;

39

2.      For consequential damages; and

3.      For such other and further relief as the Court deems just and proper.

**<u>On the Third Cause of Action</u>**

1.      For a judgment in favor of HIMSS for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that HIMSS is entitled to recover under the Policy for the *HatchMed* Lawsuit, exclusive of costs; or (2) $60,000.

**<u>On the Fourth Cause of Action</u>**

1.      For an order declaring that that the Policy obligates Federal to defend and indemnify HIMSS in connection with the *Novarad* Lawsuit.

**<u>On the Fifth Cause of Action</u>**

1.      For compensatory damages in an amount to be proven at trial, including attorneys' fees, costs and expenses and interest thereon;

2.      For consequential damages; and

3.      For such other and further relief as the Court deems just and proper.

**<u>On the Sixth Cause of Action</u>**

1.      For a judgment in favor of HIMSS for an amount equal to the greater of: (1) 60% of the amount which the trier of fact finds that HIMSS is entitled to recover under the Policy for the *Novarad* Lawsuit, exclusive of costs; or (2) $60,000.

Dated: March 9, 2021                 Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/Robert C. Collins III
Mark S. Mester (Illinois Bar No. 6196140)
  mark.mester@lw.com
Robert C. Collins III (Illinois Bar No. 6304674)
  robert.collins@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700

Robert J. Gilbert (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone: 617.948.6059
Robert.Gilbert@lw.com

Charles F. Sprague (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.395.8115
Charles.Sprague@lw.com

*Attorneys for Defendant Healthcare Information
and Management Systems Society, Inc.*

41