IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   20 C 6797 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| HEALTHCARE INFORMATION AND | ) | |
| MANAGEMENT SYSTEMS SOCIETY, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Insurance Company has brought a three count amended complaint against

its insured, defendant Healthcare Information and Management Systems Society, Inc., seeking a

declaration that it has no duty to defend or indemnify defendant in two underlying actions brought

against defendant as a result of defendant's cancellation of its 2020 tradeshow.   Defendant

answered the amended complaint, raised nine affirmative defenses and brought a six count

counterclaim asserting that each underlying lawsuit is covered by the policy in question, breach of

contract by plaintiff for denying coverage as to each underlying lawsuit, and claims for bad faith

denial of coverage as to each underlying lawsuit.   Plaintiff has moved to dismiss the counterclaim

for failure to state a claim.   For the reasons described below, that motion is granted in part and

denied in part.

## BACKGROUND

Defendant, a non-profit corporation, describes itself as a "global advisor and thought

leader" serving the "global health information and technology communities."   It claims to be the

country's oldest and most respected non-profit in the field of health information systems.   Its

annual flagship event is the "HIMSS Global Conference," a tradeshow that attracts nearly 50,000 attendees, exhibitors, staff, and others, making it one of the largest annual conferences of any type in the United States. The products and services defendant provides at the conference include the development, sponsorship, and presentation of a weeklong program of seminars, courses, colloquia, lectures, and other professional education opportunities. To accomplish this, it leases a convention center and then sublets concrete floor space to exhibitors, who spend tens of thousands of dollars for stalls, displays and presentations to promote their products and services.

The 2020 Global Conference was scheduled to begin in Orlando in the second week of March, at the start of the COVID-19 pandemic. As a result, on the advice of an independent panel of public health experts, defendant cancelled the conference shortly before it was to start. Not unexpectedly, this decision left a wake of disappointed exhibitors who had paid non-refundable fees to defendant and had also incurred thousands of dollars in non-recoverable expenses for travel, lodging, and unusable booths, displays, and promotional materials.

On June 1, 2020, one of defendant's exhibitors, Novarad Corporation, sued defendant in the Illinois state court, seeking return of its $38,325 exhibitor fee and damages for the "significant resources and amounts to prepare for its exhibit presentation at the convention, including travel, accommodation, signage, and booth development, totaling not less than $120,386.72. One week later, on June 8, 2020, another exhibitor, HatchMed Corporation, brought a putative class action in this district court, No. 1:20-CV-3377, asserting that defendant breached its contracts with the putative class members by refusing, based on a force majeure clause in the contracts, to refund the fess paid to defendant. Defendant removed the Novarad state court action to federal court in this district court as related to the HatchMed action. HatchMed then filed an amended complaint

2

adding Novarad as a plaintiff. The parties then reached a settlement of the HatchMed class action which the court finally approved on June 24, 2021.   As part of that settlement, the plaintiffs released any and all claims they had against defendant arising from or relating to the 2020 conference, the cancellation of the conference, or any contract or agreement related to the conference.

Plaintiff issued defendant a "ForeFront Portfolio Not-For-Profit Organizations Policy covering October 1, 2019, to October 31, 2020.   The Policy's Directors & Officers Entity Liability Section (the "D&O coverage") provides that plaintiff has a duty to defend covered claims.   The pertinent insuring clause of the D&O coverage provides that plaintiff "shall pay, on behalf of [defendant] Loss which the [defendant] becomes legally obligated to pay on account of any claim first made against the [defendant] during the policy period."   Loss is defined to mean amounts defendant becomes legally obligated to pay on account of any covered claim, including damages, judgments, settlements, and defense costs for a" wrongful act committed, attempted, or allegedly committed or attempted by [defendant] . . .."   Loss does not include any amount not insurable under the law applicable to the policy.

The D&O coverage also contains two arguably applicable exclusions.   The "Professional Services Exclusion" provides that "[n]o coverage will be available under this coverage section for Loss on account of any Claim based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of any duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any Professional Services (as defined in paragraph 2 of this endorsement) for others by any person or entity otherwise entitled to coverage under this Coverage

3

Section. . . ."   The second exclusion, the "Contract Exclusion," provides that plaintiff "shall not be liable under [the insuring clause] for Loss, other than Defense Costs, on account of any Claim based upon, arising from, or in consequence of any actual or alleged liability of [defendant] under any written or oral contract or agreement, provided that this Exclusion 6(a) shall not apply to the extent the [defendant] would have been liable in the absence of such contract or agreement."

Defendant notified plaintiff of the underlying actions and sought coverage and defense. Plaintiff has denied that it owes a duty to defend or indemnify defendant based on the Professional Services Exclusion or the Contract Exclusion, and that any payment by defendant would not constitute a loss under the policy.   When the parties could not reach agreement on coverage, plaintiff filed the instant action.

## DISCUSSION

Plaintiff has moved under Fed. R. Civ. P. 12(b)(6) to dismiss the counterclaim for failure to state a claim.   To survive such a motion, the counterclaim must contain "enough factual matter (taken as true)" to suggest that a plaintiff is entitled to relief.   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   The counterclaim must include "enough facts to state a claim to relief that is plausible on its face." Id. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"Contracts of insurance are subject to the same rules of construction applicable to other types of contracts."   International Minerals & Chemical Corp. v. Liberty Mutal Ins. Co., 168 Ill.

App. 3d 361, 370 (1ˢᵗ. Dist. 1991).[1]   When construing an insurance policy, the court's primary

function is to ascertain and enforce the intentions of the parties as expressed in the agreement.

Mount Vernon Fire Ins. Co. v. Heaven's Little Hands Day Care, 343 Ill. App. 3d 309, 314 (1st.

Dist. 2006).   To do this, the court construes the policy as a whole, taking into account the type of

insurance for which the parties have contracted, the risks undertaken and purchased, the subject

matter that is insured, and the purpose of the entire contract.   Crum and Forster Managers Corp. v.

Resolution Trust Corp., 156 Ill. 2d 384, 191 (1993).   "If the terms of the policy are clear and

unambiguous, they must be given their plain and ordinary meaning."   American States Ins. Co. v.

Koloms, 177 Ill. 2d 473, 478 (1997).

An insurer's duty to defend its insured is much broader than its duty to indemnify.

Outboard Marine Corp. v. Liberty Mutual Ins. Co., 154 Ill. 2d 90, 125 (1992).   To determine

whether an insurer has a duty to defend its insured, "the court must look to the allegations in the

underlying complaint and compare these allegations to the relevant coverage provisions of the

insurance policy."   Crum and Forster Managers Corp., 156 Ill. 2d at 394.   "This duty to defend

extends to cases where the underlying complaints allege several causes of action, one of which is

within the coverage of the policy, even if the others are not."   Rosalind Franklin University of

Medicine & Science v. Lexington Ins. Co., 2014 IL App (1st) 113755, ¶ 80 (1ˢᵗ Dist. 2014).

If the facts alleged in the underlying complaint potentially bring the suit within policy

coverage, an insurer may still be relieved of its duty to defend if it demonstrates, as a matter of law,

that an exclusion applies to the face of the complaint.   Novak v. Insurance Administration

Unlimited, Inc., 91 Ill. App. 3d 148, 151-52 (1980).   Provisions that limit or exclude coverage are

construed liberally in favor of the insured and "most strongly against the insurer."   Squire v.

---

1 The parties agree that Illinois law is to be applied to the contract.

Economy Fire & Casualty Co., 69 Ill. 2d 167, 179 (1977). Consequently, the court must read exclusions narrowly, id., and the insurer has the burden of affirmatively demonstrating the applicability of an exclusion. Skolnik v. Allied Property & Casualty Ins. Co., 2015 IL App (1st) 142438, ¶ 26. The applicability of the provision must be clear and free from doubt, and "[a]bsent absolute clarity on the face of the complaint that a particular policy exclusion applies, there exists a potential for coverage and an insurer cannot justifiably refuse to defend." Lorenzo v. Capital Indemnity Corp., 401 Ill. App. 3d 616, 620 (1st Dist. 2010).

Plaintiff first argues that the policy's "Professional Services Exclusion" relieves it of any duty to defend the underlying complaints. As noted, that provision excludes coverage for "Loss on account of any Claim based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of any duty committed, attempted, or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any Professional Services (as defined in paragraph 2 of this endorsement) for others by any person or entity otherwise entitled to coverage under this Coverage Section. . . ." Illinois courts have adopted an expansive definition of the term "professional services" when analyzing professional services policy exclusions. Rosalind Franklin University of Medicine & Science, 2014 IL App (1st) 113755 at ¶ 83. "Professional services" as used in an insurance exclusionary provision "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." State Bank & Trust Co. v. INA Insurance Co., 207 Ill. App. 3d 961, 967 (4th Dist. 1991).

6

In the instant case, the underlying complaints sought damages for breach of contract for failing to return fees paid, as well as damages for costs the plaintiffs incurred preparing for and travelling to the conference.   The claims are not entirely based on defendant's negligent provision of professional services, but instead seek reimbursement for damages resulting from the inability to sublet floor space.   Subleasing floorspace is not necessarily a professional service, and those underlying complaints do not allege that defendant exercised poor professional judgment when cancelling the conference in the face of the pandemic.   Consequently, the court concludes that plaintiff has failed to carry its burden of establishing with absolute clarity that the professional services exclusion applies.

Next, plaintiff argues that the contract exclusion negates its duty to indemnify.   That provision provides that plaintiff "shall not be liable under [the insuring clause] for Loss, other than Defense Costs, on account of any Claim based upon, arising from, or in consequence of any actual or alleged liability of [defendant] under any written or oral contract or agreement, provided that this Exclusion 6(a) shall not apply to the extent the [defendant] would have been liable in the absence of such contract or agreement."   Even if plaintiff's position is correct, the exclusion, by its own terms, does not negate plaintiff's duty to defend defendant in the underlying cases. Moreover, as noted above, the underlying complaints sought more than contract damages, and the ultimate settlement agreement settled all of the HatchMed plaintiffs' claims against defendant, not just contract claims.

Next, plaintiff argues that the damages sought in the underlying lawsuits and the settlement reached do not constitute a loss covered by the policy.   Under the policy, plaintiff is obligated to pay on behalf of defendant any "loss which [defendant] becomes legally obligated to pay on

7

account of any claim first made against the [defendant] during the policy period, . . . for a wrongful act committed, attempted, or allegedly committed or attempted by the [defendant] . . . before or during the policy period, but only if such claim is reported to the Company in writing . . .."  Loss does not include any amount not insurable as a matter of law.

Plaintiff argues that the underlying lawsuits sought the return of amounts paid to defendant under the contracts which defendant wrongfully retained after cancelling the convention. Plaintiff argues that the recovery of wrongfully retained amounts is restitutionary in nature, represents the return of ill-gotten gains, and is uninsurable under the law.  See Ryerson Inc. v. Federal Insurance Co., 676 F.3d 610, 612 (7th Cir. 2012) (Loss does not include restitution paid by an insured, as distinct from damages.  "[O]therwise fraud would be encouraged.").  The underlying cases do not allege fraud, and the Force Majeure clause in the contracts provided plausible grounds for defendant to deny the refunds.  Additionally, Ryerson noted that a "judgment or settlement in a fraud case could involve a combination of restitution and damages, and then the insurance company would be liable for the damages portion in accordance with the allocation formula in the policy." Id. (Emphasis in original.)  The plaintiffs in the HatchMed case settled all claims against defendant, not just the claim for the return of the fees.  Consequently, the court concludes that the underlying lawsuits and settlement constitute a loss under the policy.

Next, plaintiff argues that the court should dismiss the counterclaims for declaratory judgment, arguing that they are mirror images of plaintiff's claim for a declaratory judgment. Although the court has discretion to dismiss claims that add nothing to the case beyond the issues that plaintiff's claims raise, see Maui Jim, Inc. v. SmartBuy Guru Enterprises, 2018 WL 509960 at * 8 (N.D. Ill. Jan 23, 2018), this court generally elects not to do so, particularly when, as in the

instant case, the counterclaim raises issues broader than the original claims. The instant counterclaims seek a declaration that plaintiff has a duty to defend broadly, while the original complaint alleges no duty to defend based on specific provisions of the policy and attempts to reserve the right to raise other policy terms that might deny coverage.

Finally, plaintiff seeks dismissal of counts three and six of the counterclaim, which assert claims for a statutory penalty for bad faith denial of coverage under 215 ILCS 5/155. That section provides provides "an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." Phillips v. Prudential Ins. Co. of America, 714 F.3d 1017, 1023 (7th Cir. 2013). "If there is a bona fide dispute regarding coverage—meaning a dispute that is real, genuine, and not feigned—statutory sanctions under section 5/155 are inappropriate." Id. (Internal citations omitted.) Section 5/155 claims may be dismissed at the pleadings stage when a plaintiff or counter-plaintiff fails to state a sufficient factual basis for sanctions, or when a bona fide dispute regarding coverage is apparent from the face of the complaint. See 9557, LLC & River W. Meeting Assocs., Inc. v. Travelers Indem. Co. of Conn., 2016 WL 464276 at *4 (N.D. Ill. Feb. 8, 2016).

In the instant case, the counterclaim states in conclusory fashion that plaintiff has acted vexatiously and unreasonably in its denial of coverage as to the underlying lawsuits by taking unreasonable positions with respect to the application of those suits' allegations, failing to provide a reasoned response to defendant's coverage letter, and by filing the instant lawsuit. These allegations are insufficient to plead a plausible basis for relief. Additionally, the complaint and counterclaims both establish a bone fide dispute about coverage. Consequently, the court agrees with plaintiff that the counterclaim fails to state a claim for § 5/155 liability. Counts three and six

of the counterclaim are dismissed.

## **CONCLUSION**

For the reasons described above, plaintiff's motion to dismiss the counterclaim [Doc. 30] is granted in part and denied in part. Counts three and six of the counterclaim are dismissed. The motion is denied in all other respects. Plaintiff is directed to answer the counterclaim by November 12, 2021. Telephonic status hearing set for October 26, 2021, is reset to December 10, 2021, at 9:15 a.m.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

DATE: October 19, 2021

10